**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **YSLETA DEL SUR PUEBLO,** *a federally recognized Indian tribe,* **_Plaintiff,_** | § | |
| **v.** | § | **3:23-CV-00132-DCG** |
| **CITY OF EL PASO,** *a Texas home-rule municipality,* **_Defendant._** | § | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant City of El Paso's ("City") "First Amended Rule 12(b) Motion to Dismiss and to Expunge Notice of *Lis Pendens*" ("Motion"), ECF No. 19, in the above-captioned case. Senior United States District Judge David C. Guaderrama referred the motion to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and W.D. TEX. L.R. APP'X C, RULE 1(d). *See* ECF No. 51. For the reasons that follow, the Court **RECOMMENDS** that the City of El Paso's Motion be **GRANTED.**

## I. BACKGROUND

### A. Procedural Background

Plaintiff Ysleta Del Sur Pueblo ("Pueblo") is a federally recognized Indian Tribe. Pl.'s Compl. ¶1 (citing Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 88 Fed. Reg. 2112, 2115 (Jan. 12, 2023)). The dispute at issue involves the Pueblo's claim to an undeveloped tract of land in El Paso's Lower Valley. The Pueblo brought this declaratory judgment action on March 31, 2023, seeking a "declaratory judgment that the [Pueblo] owns a beneficial possessory interest in aboriginal Indian title and Spanish land grant

title to 155.56 acres of Indian trust land [("disputed property")] . . . to which the City claims a competing title." Verified First Amended Complaint for Declaratory Judgment Confirming Title to Real Property and Injunctive Relief and Damages [hereinafter Am. Compl.], ECF No. 15 at 2. The Pueblo also requests injunctive relief against interference by the City with the Pueblo's occupation and quiet enjoyment of the disputed property, and damages. *Id.* The Pueblo also asks the Court to enjoin the City from "claiming any estate, right, title, or interest in or to the [disputed property] and from interfering with the Plaintiff's quiet enjoyment of the [disputed property]." Am. Compl. at 20.

On August 8, 2023, the City filed its instant motion seeking to dismiss this case for lack of subject matter jurisdiction and in the alternative for failure to state a claim upon which relief can be granted. *See* Mot., ECF No. 19.

**B. The Subject Property**

The land at issue is 155.56 acres of real property [hereinafter "the Subject Property"] known by the Pueblo as the "Sand Hills."[1] The Pueblo asserts that the Sand Hills area has longstanding historical, religious, and cultural significance to the Tribe, has been used and continues to be used for ceremonies, religious purposes, and cultural practices important to the Pueblo. ECF 15 at 15.

**C. Causes of Action**

1. Federal Common Law Trespass

In its first cause of action, the Pueblo alleges a continuing federal common law trespass based on its assertion to aboriginal Indian title and Spanish land grant trust lands beginning in approximately 1936. *Id.* at 15.

[1] A detailed description of the property, detailing the individual parcels and their addresses which comprise the Property, can be found at ¶50, pp. 11-12, of the Amended Complaint.

2. Violation of the Indian Non-Intercourse Act

The Plaintiff's second cause of action alleges a violation of the Indian Non-Intercourse Act, 25 U.S.C. §177, which prohibits the conveyance, alienation, or privatization of tribal land. The Pueblo alleges that the Defendant is liable under this theory for its use and occupation of the subject Property, as well as its failure to return the property. *Id.* at 17-18.

3. Section 1983 violation

The Plaintiff alleges that the Defendant has deprived it of rights, privileges and immunities secured by federal law under 42 U.S.C. §1983. *Id.* at 19.

As to all three causes of action, the Pueblo requests declaratory, injunctive, and compensatory relief, as well as exemplary damages. *Id.* at 15-20. The Pueblo asserts that the Court has jurisdiction over these claims under the Declaratory Judgment Act, 28 U.S.C. §2201 (as to the federal common law trespassing claim), and pursuant to 28 U.S.C. §§1331 and 1362 for the remaining causes of action.

## II. DISCUSSION

At the core of this suit and the causes of action is the Pueblo's claim of title regarding the subject property based on two distinct legal theories: aboriginal Indian title and Spanish land grant title. Am. Compl. ¶3. By way of historical background, which is central to the analysis of these title claims, the complaint details how the Tigua people came to the present-day El Paso area in the wake of the 1680 Pueblo Revolt in present-day northern New Mexico. The complaint states that "[a] contingent of Tigua (Tiwa-speaking) Indians from Isleta Pueblo [within present day New Mexico], along with Piro Indians from the Pueblos of Sevilleta, Alamillo, Socorro, and Senecú, south of Albuquerque, were relocated by the Spaniards in their 1680 flight to Mission Nuestra

Señora de Guadalupe del Paso de Rio del Norte." *Id.* ¶10. "[Ysleta Del Sur Pueblo] was established at its present location by the Tigua speaking Pueblo Indians who were relocated by the Spanish from Isleta Pueblo between 1680 and 1682." *Id.* ¶12. "From its establishment, [Ysleta Del Sur Pueblo] was designated a 'Pueblo de Indios,' an officially recognized Indian corporate entity under Spanish law and administration in colonial New Mexico." *Id.* ¶14. The Pueblo takes the position that "[Ysleta Del Sur Pueblo] members have continuously used and occupied the Pueblo's aboriginal Indian title and Spanish grant lands, including the subject Property, exclusively as against all other Native American tribes, from their arrival in the El Paso area between 1680 and 1682 to the present, and long prior to the incorporation of Defendant city of El Paso in 1873." *Id.* ¶15. "Prior to 1704, pursuant to Spanish law and policy as administered in colonial New Mexico, the Spanish Crown made a communal, inalienable Pueblo Indian land grant to [Ysleta Del Sur Pueblo]." *Id.* ¶21. On that basis, the Pueblo asks the Court to enter declaratory judgment "1) confirming that Plaintiff is and has been the rightful holder of a federally-protected beneficial and possessory interest in its Spanish land grant and aboriginal Indian federal trust titles to the subject Property since at least 1682, and 2) that the Defendant has no estate, right, title or interest in or to the subject Property." *Id.* at 20.

In the instant Motion, the City asserts that the Court should dismiss this case because the Court lacks subject-matter jurisdiction and in the alternative because Plaintiff fails to plead a claim upon which relief can be granted. Mot. at 1. The City argues that this case "is the refiling of a prior declaratory-judgment action that this Court properly dismissed for lack of subject-matter jurisdiction, because there was no federal question jurisdiction. *Id.* (citing *Ysleta Del Sur Pueblo v. City of El Paso*, 433 F. Supp. 3d 1020 (W.D. Tex. 2020), *affirmed*, 2021 WL 5504744, at *1 (5th Cir. 2021)). The City contends that "[n]o facts or law changed since this Court dismissed the case

in 2020, and the predicate cause of action for declaratory relief is still premised on state law (trespass to try title claim) and not federal law, thus once again depriving this Court of subject-matter jurisdiction." *Id.* at 2.

In that suit the Pueblo sought a declaratory judgment seeking confirmation that it held title to 111.73 acres of land owned by the City of El Paso, based solely on a Spanish land grant,. *Ysleta Del Sur Pueblo*, 433 F. Supp. 3d. at 1023. In the instant case, the Pueblo currently seeks a declaratory judgment that it is the beneficial, possessory owner of those exact same 111.73 acres of land as well as an additional 43.83 acres of land. Am. Compl. ¶50.

Because subject matter involves the Court's power to hear an action, the Court will address its jurisdiction before reaching any other issues. *See Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) ("A Fed. R. Civ. P. 12(b)(1) motion for lack of subject matter and personal jurisdiction must be considered by the district court before other challenges 'since the court must find jurisdiction before determining the validity of a claim.'").

**A. 12(b)(1) Lack of Subject Matter Jurisdiction Standard**

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Of Am.*, 511 U.S. 375, 377 (1994). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississipi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."

*Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). However, "[w]hen a federal claim appears on the face of the complaint, 'dismissal for lack of subject matter jurisdiction is only proper in the case of a frivolous or insubstantial claim, i.e., a claim which has no plausible foundation or which is clearly foreclosed by a prior Supreme Court decision.'" *Young v. Hosemann*, 598 F.3d 184, 188 (5th Cir. 2010) (quoting *Bell v. Health-Mor.*, 549 F.2d 342, 344 (5th Cir. 1977)).

**B. 12(b)(6) Failure to State a Claim Upon Which Relief can be Granted Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.' " *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338.

Courts "disregard[] bare assertions of collective responsibility, unsupported by concrete factual allegations." *Martinez v. City of N. Richland Hills*, 846 F.App'x 238, 243 (5th Cir. 2021). When referring to a group of defendants collectively, each defendant must be able to discern what is alleged against it. *See id.*; *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) ("[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant[.]"); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

**C. Analysis**

All of the Plaintiff's causes of action are predicated on it having a protected property interest in the 155.56 acres at dispute here. The Pueblo asserts that the Court has subject-matter jurisdiction to consider its claims under federal common law, 28 U.S.C. §1331 for federal question jurisdiction; 28 U.S.C. §1362 for civil lawsuits brought by Indian tribes; 25 U.S.C. §177 for

purchases or grants of lands from Indians; and 42 U.S.C. §1983. The Pueblo's lawsuit seeks declaratory judgment "confirming that Plaintiff is and has been the rightful holder of a federally-protected beneficial and possessory interest in its Spanish land grant and Aboriginal Indian federal trust titles to the subject Property." Compl. at 20. ECF No. 15. The Court will address subject matter jurisdiction under the Plaintiff's Spanish land grant theory and Aboriginal title in turn.

**1. 12(b)(1) Analysis as to Spanish Land Grant Title**

This Court does not have subject-matter jurisdiction over the Pueblo's claims premised on Spanish land grant title. In YDSP I, where the Pueblo was disputing a smaller portion of the same property in dispute here, the Pueblo based its suit entirely on Spanish land grant title. *See Ysleta Del Sur Pueblo*, 433 F.Supp.3d at 1026. There, the Court was "of the view that the Pueblo's claim does not raise a federal question because of two reasons: (1) the predicate cause of action for the Pueblo's declaratory judgment suit is based on state law, not federal law; and (2) the Pueblo's asserted right to the Property is not a federally derived right and does not involve a substantial federal issue." *Id.*

The analysis on this issue is unchanged from YDSP I. The inclusion in the instant suit of the additional 43.83 acres to the 111.73 acres at issue in YDSP I does not change the conclusion reached by that Court, nor does the Plaintiff assert anywhere that this additional acreage changes the legal analysis that was considered by the court in that earlier case. Here, like before, the Pueblo's claims under Spanish land grant title do not " 'arise under' federal law because it is not a cause of action provided by the Treaty of Guadalupe Hidalgo or created by another federal law. Nor does the Pueblo's claim necessarily depend on the resolution of a substantial question of federal law." *Id.* 433 F.Supp.3d at 1027. Therefore, the Court recommends that all of Plaintiff's claims premised on Spanish land grant title be **DISMISSED** for lack of subject matter jurisdiction.

**2. 12(b)(1) Analysis as to Aboriginal Title**

Under the Declaratory Judgment Act, federal courts "may declare the rights and other legal relations of any interested party seeking such declaration." *Koch Project Solutions, L.L.C. v. Alliance Process Partners, L.L.C.*, No. 21-20093, 2022 WL 16859961, at *4 (5th Cir. Nov. 11, 2022) (citing 28 U.S.C. § 2201(a)). The Declaratory Judgment Act is a procedural device and requires an underlying substantive cause of action to support declaratory relief. *Rocha v. U.S. Bank N.A.*, EP-16-CV-00417-DCG, 2017 WL 3723679, at *9 (W.D. Tex. Aug. 1, 2017) (citing *Harris Cnty. v. MRSCOP Inc.*, 791 F.3d 545, 553 (5th Cir. 2015)). Here, in its complaint the Pueblo styles its lawsuit as "a federal common law action against the city of El Paso ("City") seeking a declaratory judgment." Am. Compl. at 2. The Pueblo premises its lawsuit on federal common law trespass to Indian tribal trust property, the INIA, and Section 1983. *Id.*

A "federal question exists 'only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Ysleta del Sur Pueblo v. City of El Paso*, No. 20-50313, 2021 WL 5504744, at *2 (5th Cir. Nov. 23, 2021) (quoting *Singh v. Duane Morris LLP*, 538 F.3d 334, 337-38 (5th Cir. 2008)). "Indeed, the Supreme Court has made clear that federal question jurisdiction may exist over claims arising under federal common law." *Cooperative Ben. Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 328, 328 n.12 (5th Cir. 2004) (citing *Illinois v. Milwaukee*, 406 U.S. 91, 100 (1972) ("We see no reason not to give 'laws' its natural meaning, and therefore conclude that §1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin.").

While this case is similar to the prior YDSP I case, the Pueblo asserts in this case a claim to the subject property based on Aboriginal title (in addition to the Spanish Land Grant title

discussed above), while in YDSP I, the claim was entirely premised *solely* on Spanish land grant title. Unlike the Pueblo's claims under Spanish Land Grant theory, which are the sole province of the state courts, here, federal courts may have jurisdiction over the federal common law, INIA, and § 1983 claims premised on Plaintiff's Aboriginal title, as they all arise under federal law.

**3. Federal Question and Federal Tribal Jurisdiction**

Federal district courts may exercise federal-question jurisdiction over a case when the action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This requires that a Plaintiff's complaint "establish[] either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Const. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983). 28 U.S.C § 1362 grants district courts original jurisdiction for all civil actions brought by an Indian tribe "wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." As explained in YDSP I, "[28 U.S.C.] § 1362 will provide a jurisdictional basis for an Indian tribe's claims only if they satisfy the 'arises under' requirement of [28 U.S.C.] § 1331." *YDSP I*, 433 F.Supp.3d at 1025 (citing *Mescalero Apache Tribe v. Martinez*, 519 F.2d 479, 483 (10th Cir. 1975) ("[Section] 1362 does not in our view dispense with the necessity of showing the presence of a federal question.... [I]n order for jurisdiction to attach under [§] 1362, the matter in controversy, and we emphasize that phrase, must itself arise under the Constitution, laws, or treaties of the United States.")).

Here, the Court has federal question subject matter jurisdiction over Plaintiff's aboriginal title-based claims of federal common law trespass, INIA violations, and § 1983 violations. These claims arise under federal common and statutory law and therefore grant this court subject matter jurisdiction under both §§ 1331 and 1362. However, as will be shown below, the Pueblo does not

meet its Fed. R. Civ. P. 12(b)(6) burden to properly state a claim invoking this Court's federal question jurisdiction.

**4. 12(b)(6) Analysis as to Aboriginal Title**

The Pueblo brings Federal Common Law Trespass, Indian Non-Intercourse Act, and 42 U.S.C. § 1983 claims against the City of El Paso. ECF No. 15 at 15, 17-19. Each of these claims is premised on the Pueblo's alleged aboriginal title to the disputed property. Because the Pueblo pleads itself out of aboriginal title, none of its claims state a claim upon which relief can be granted.

" 'Aboriginal title is a unique form of title to real property, loosely analogized to a "perpetual right of occupancy" with an "ultimate reversion in fee" to the sovereign'" *Ysleta del Sur Pueblo v. City of El Paso*, No. 20-50313, 2021 WL 5504744, at *3 (5th Cir. Nov. 23, 2021) (quoting *Alabama-Coushatta Tribe v. United States*, 757 F.3d 484, 486 n.1 (5th Cir. 2014)). Aboriginal title includes "a right of occupancy, use, and enjoyment, which can only be extinguished by an express act of Congress." *Id.* (citing *Oneida Indian Nation of N.Y. State v. Cnty of Oneida*, 414 U.S. 661, 667-69 (1974).

"Aboriginal title is an equitable possessory interest held by Native American tribes 'because of immemorial occupancy[.]'" *Id.* (quoting *N.W. Bands of Shoshone Indians v. United States*, 324 U.S. 335, 338 (1945); citing *United States v. Santa Fe Pac. R.R. Co.*, 314 U.S. 339, 345 (1945)). It requires the Pueblo to plead "long-standing physical possession of the Property 'from time immemorial' to the time the colonists arrived." *See Ysleta Del Sur Pueblo*, 433 F. Supp. 3d at 1029 (citing *Miami Tribe of Okl. v. United States*, 175 F. Supp. 926, 936 (Ct. Cl. 1959)). In other words, "[a] tribe establishes aboriginal title by 'immemorial occupancy . . . to the exclusion of any other Indians,' i.e., by continually and exclusively fishing, hunting, gathering, and otherwise

occupying lands." *Pueblo of Jemez v. United States*, 350 F.Supp.3d 1052, 1093 (D. N.M. 2018) (citing *N.W. Bands of Shoshone Indians v. United States*, 324 U.S. at 338-39)).

Here, the Ysleta Del Sur Pueblo fails to plead that it has aboriginal title because it does not plead "immemorial occupancy . . . to the exclusion of any other Indians." *Ysleta Del Sur Pueblo v. City of El Paso*, 433 F. Supp.3d 1020, 1029 (W.D. Tex. Jan. 15, 2020) (quoting *N.W. Bands of Shoshone Indians v. United States*, 324 U.S. 335, 338 (1945)).

Instead, the Pueblo's complaint identifies 1680 as the date that Spain moved the Pueblo from south of Albuquerque to their present location. Compl. ¶10. Moreover, the complaint notes that the Pueblo shared this area with other tribes, namely "Piro Indians from the Pueblos of Sevilleta, Socorro, and Senecú." *Id.* The complaint also argues that "[p]rior to 1704, pursuant to Spanish law and policy as administered in colonial New Mexico, the Spanish Crown made a communal, inalienable Pueblo Indian land grant to [Ysleta Del Sur Pueblo]." *Id.*¶21. The history of the Pueblo's relocation by the Spanish and Spanish land grant makes clear that the Pueblo does not have aboriginal title to the disputed property because it has not plead that it occupied the disputed property since time immemorial. The Tiguas presence in its current lands date to an essentially fixed, identifiable date (1680), when the Spanish relocated the Pueblo from present day New Mexico to El Paso County, Texas. Unlike, for example the Oneida Nation, which "from time immemorial down to the time of the American Revolution . . . had owned and occupied some six millions acres of land in the State of New York[,]" the Tiguas's presence in its current location, even for the very lengthy period of over three centuries, does not meet the "time immemorial" criteria required to perfect aboriginal title, as set out by the Supreme Court in *United States v. Santa Fe Pac. R. Co.* and as interpreted by other courts. 314 U.S. at 359-60; *see Oneida Indian Nation of N.Y. State v. Cnty of Oneida*, 414 U.S. at 664, 671, 677; *Oneida Cnty. N.Y. v. Oneida*

*Indian Nation of N.Y. State*, 470 U.S. 226, 235 (1985). Additionally, the presence of other peoples, such as the Piro, demonstrate the Tiguas's presence of over three centuries in present-day El Paso County has not been "to the exclusion of other Indians." *N.W. Bands of Shoshone Indians v. United States*, 324 U.S. at 338-39. The Pueblo's own recitation of this historical chronology thus pleads itself out of aboriginal title and fails to state a claim upon which relief can be granted as to any claim in this case.

*a) Federal Common Law Trespass*

Generally, federal common law governs an action for trespass on Indian lands. *United States v. Milner*, 583 F.3d 1174, 1182 (9th Cir. 2009) (citing *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 28 F.3d 1544, 1549 n.8 (9th Cir. 1994); *Oneida Cnty. v. Oneida Indian Nation of New York State*, 470 .S. 226, 235-36 (1985)). That law "generally comports with the Restatement of Torts." *Id.* (citing *United States v. West*, 232 F.2d 694, 699 (9th Cir. 1956)). The Restatement (Second) of Torts explains Trespass to Land as:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
> (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
> (b) remains on the land, or
> (c) fails to remove from the land a thing which he is under a duty to remove.

Restatement (Second) of Torts § 158 (A.L.I. 1965).

By failing to demonstrate aboriginal title, the Pueblo does not plead that Defendant intentionally "enter[ed] land in the possession of the [Pueblo], or cause[d] a thing or a third person to do so" and therefore the Pueblo's claim must fail. Restatement (Second) of Torts § 158 (A.L.I. 1965). Additionally, to the extent the Pueblo bases its lawsuit on Spanish land grant title the claim

also fails. As this Court explained before, the "Pueblo's claim of a non-aboriginal right of occupancy is not a federally derived property right because it was never guaranteed by a United States treaty or statute." *Ysleta Del Sur Pueblo v. City of El Paso*, 433 F.Supp.3d 1020, 1029 (W.D. Tex. Jan. 15, 2020). Accordingly, the Court recommends that the Pueblo's federal common law trespass claim be dismissed for failure to state a claim upon which relief can be granted.

The Pueblo's remaining claims consisting of a violation of the Indian Non-Intercourse Act, 25 U.S.C. §177, and a violation of 42 U.S.C. § 1983 should also be dismissed. Both of these claims are premised on the Pueblo having a possessory right or title in the disputed property. *See* 25 U.S.C. §177; 42 U.S.C. § 1983. However, as described above; by failing to plead aboriginal title and this Court lacking jurisdiction to adjudicate Spanish land grant title, the complaint fails to plead claims that survive the motion to dismiss stage.

*b) Indian Non-Intercourse Act*

The Indian Non-Intercourse Act requires a Tribe to show that "(1) it constitutes an Indian tribe within the meaning of the Act; (2) the Tribe had an interest in or claim to land protected by the Act; (3) the trust relationship between the United States and the Tribe has never been expressly terminated or otherwise abandoned; and (4) the Tribe's title or claim to the interest in land has been extinguished without the express consent of the United States." *Tonkawa Tribe of Oklahoma v. Richards*, 75 F.3d 1039, 1044 (5th Cir. 1996). Here, by failing to adequately demonstrate aboriginal title, the Pueblo's complaint fails to plead that it "had an interest in or claim to land protected by the Act." *Id.* Accordingly, it fails to plead a claim upon which relief can be granted as to the INIA.

*c) Section 1983*

"To state a Fourteenth Amendment due process claim under §1983, 'a plaintiff must first identify a protected life, liberty, or property interest and then prove that governmental action

resulted in a deprivation of that interest.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)); *see also Vinci Inv., Ltd. P'ship v. City of Arlington, Texas*, 747 F. App'x 223, 226 (5th Cir. 2018) ("Without a protected property interest, there can be no substantive due process violation."). Here, again by failing to demonstrate aboriginal title, the Pueblo's complaint fails to identify a protected property interest under §1983 because "without such an interest, there [is] no deprivation of Constitutional rights and privileges." *Casey v. Livingston Parish Communications Dist.*, No. 07-30990, at *2 (5th Cir. Mar. 6, 2009). Accordingly, the Pueblo fails to plead a claim upon which relief can be granted as to Section 1983.

Accordingly, the Court **RECOMMENDS** that Plaintiff's claims under the INIA and 42 U.S.C. § 1983 be dismissed for failure to state a claim upon which relief can be granted.

**D. Lis Pendens Analysis**

The City explains that in an attempt to cloud title over the disputed property, "on April 26, 2023 the Pueblo filed notices of *lis pendens* regarding the [disputed] Property with the El Paso County Clerk's office." ECF No. 19 at 17. In its response, the Pueblo argues that the Court should deny the request to expunge the notices of lis pendens because "the Court has subject matter jurisdiction, and the Complaint is not barred by preclusion doctrines." ECF No. 24 at 19.

In its Amicus Brief to the Court, the Ysleta Independent School District ("Ysleta ISD") highlights the ripple effects of this litigation by arguing that the Pueblo's deficient title claims have interfered with an important public institution's ability to sell its properties. ECF No. 54 at 4-7. Ysleta ISD details that during efforts to sell several of its properties to qualified purchasers "[t]he Pueblo chose to continue its campaign of slandering the District's title to its properties, by sending a letter . . . to the real estate agent representing the prospective purchaser . . . . It claimed in this letter that the District had failed to be 'upfront and honest;' that the District's interest in the property

was 'void as it derives from fraudulent transfers;' that the Pueblo had 'superior title to the property;' that the District was unlawfully 'intentionally involving private citizens in its attempt to deprive the Pueblo of its property interests;' and forwarded a copy of the lawsuit it had filed in [a similar] suit." *Id.* at 6.

"A lis pendens is a 'notice, recorded in the chain of title to real property . . . to warn all persons that certain property is the subject matter of litigation.'" *Countrywide Home Loans, Inc. v. Howard*, 240 S.W.3d 1, 4 (Tex. App.—Austin 2007, pet. denied) (quoting *Lis Pendens*, BLACK'S LAW DICTIONARY (7th ed. 1999)). A lis pendens notice "may be filed during the pendency of an action involving (1) title to real property, (2) the establishment of an interest in real property, or (3) the enforcement of an encumbrance against real property." *Id.* (citing Tex. Prop. Code Ann. § 12.007(a)).

"The Texas Property Code provides two methods for removing the lis pendens: (1) expunction of a notice of lis pendens under Tex. Prop. Code § 12.0071; and (2) cancellation under Tex. Prop. Code § 12.008." *In re I-10 Poorman Investments, Inc.*, 549 S.W.3d 614, 616 (Tex. App.—Houston 2017, no pet.). Here, by their motion, Defendant requests the expunction by the Court of the lis pendens filed as to the disputed property because "[t]he Pueblo does not have an existing property interest in the Property." ECF No. 19 at 18. Texas Property Code requires a court to order a notice of lis pendens expunged if the court determines that:

> (1) the pleading on which the notice is based does not contain a real property claim;
> (2) the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim; or
> (3) the person who filed the notice for record did not serve a copy of the notice on each party entitled to a copy under Section 12.007(d).

Tex. Prop. Code § 12.0071(c).

Once a party seeks to expunge a lis pendens, the evidentiary burden shifts to the resisting party to prove by a preponderance of the evidence that its claim is probably valid. *In Re I-10 Poorman Investments, Inc.*, 549 S.W.3d at 614. Here, "[b]ecause the court has [recommended the granting of] Defendant's motion dismiss Plaintiff's claims, Plaintiff has failed to establish by a preponderance of the evidence the probable validity [its] real property claims." *Gresham v. Wells Fargo Bank, N.A.*, No. 4:14-cv-711, 2015 WL 1966721, at *5 (E.D. Tex. Apr. 29, 2015).

Accordingly, the Court **RECOMMENDS** that Defendant's motion to expunge the lis pendens should be granted. The lis pendens should be expunged. However, this court's recommendation for expunction does not itself expunge the lis pendens. *W & L Ventures, Inc. v. East West Bank*, No. H-13-00754, 2014 WL 3810692, at *2 (S.D. Tex. Aug. 1, 2014) (citing *Naddour v. Nationstar Mrtg., LLC*, No. 3:11-CV-1096-B(JJB), 2012 WL 4473127, at *7 (N.D. Tex. Sept. 27, 2012) (granting a motion to expunge lis pendens but reminding movant that it "must comply with the Texas Property Code procedures for [expunction]; [and that] this court's order does not itself expunge the lien."). The Defendant must comply with the Texas Property Code procedures to expunge the lis pendens.

## III. CONCLUSION

For these reasons the Court **RECOMMENDS** that Defendant's "First Amended Rule 12(b) Motion to Dismiss and to Expunge Notice of *Lis Pendens*," ECF No. 19, be **GRANTED**.

**SIGNED** and **ENTERED** this 28th day of August, 2026.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**